United States District Court
Southern District of Texas
**ENTERED**
March 27, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GLADYS MARLENY MILIAN, | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. 4:20-CV-02947 |
| PV HOLDING CORP. D/B/A P VEHICLE HOLDING CORP.; AVIS BUDGET CAR RENTAL, LLC; NATASHA KATHLEEN DONOVAN; NANODIAMOND PRODUCTS DESIGNATED ACTIVITY COMPANY; NDPDC CORPORATION, | § |
| Defendants. | § |

## ORDER

Before the Court is Defendants NDPDC Corporation ("NDPDC") and NanoDiamond Products Designated Activity Company's ("NPDAC") (collectively, "NanoDiamond" or "Defendants") Motion for Summary Judgment. (Doc. No. 51). Plaintiff Gladys Marleny Milian ("Milian" or "Plaintiff") filed a Response in Opposition. (Doc. No. 55). Defendants filed a Reply (Doc. No. 58), and the Plaintiff filed a Sur-Reply. (Doc. No. 59). After considering the motions, the record, and the law, the Court grants Defendants' Motion for Summary Judgment. (Doc. No. 51).

### I. Background

This is a dispute concerning a traffic accident. As Plaintiff claims, Natasha Kathleen Donovan ("Donovan") failed to yield the right of way while turning left, causing a collision with her vehicle. At the time of the collision, Donovan, an Ireland citizen, was in Houston to help set up an office location for her employer, NanoDiamond. She went to Houston with her supervisor Clem van der Riet ("van der Riet"). Van der Riet reserved a car prior to arriving in Houston. Once

1

in Houston, van der Riet and Donovan presented their licenses to the rental agent who subsequently rented them a Ford Fiesta.

On the day of the accident, Donovan was moving into an apartment. When she arrived at the apartment complex, it was closed. She then decided to drive to Starbucks to get food and coffee while she waited for the complex to open. The accident occurred on Donovan's way to Starbucks. Donovan was cited for her role in the accident.[1]

Plaintiff initially filed her lawsuit against Donovan in Harris County state court. Plaintiff subsequently added negligent entrustment claims against PV Holding Corp. ("PV Holding"), the alleged title owner of the vehicle involved in the accident, and Avis Budget Car Rental, LLCs ("Avis Budget"), the company Plaintiff believes rented the car to Donovan. PV Holding and Avis Budget subsequently removed the case to this Court on diversity grounds.

Once in this Court, Plaintiff again amended her complaint, adding claims against NanoDiamond.[2] Specifically, Plaintiff brought vicarious liability and negligent hiring and supervision claims against NanoDiamond. NanoDiamond, in response to Plaintiff's allegations, filed a Motion for Summary Judgment, arguing summary judgment is proper because (1) Donovan was not acting in the course and scope of her employment when the car accident occurred and (2) there is no evidence NanoDiamond could have reasonably foreseen that Donovan was an alleged incompetent driver.

---

[1] During her deposition, the attorney asked, "[d]id the police officer give you a citation?" (Doc. No. 51-1 at 84:3). Donovan responded, "[h]e did, yes." (Doc. No. 51-1 at 84:4). As far as the Court can tell, the actual citation is not in the record. Therefore, it is unclear for what unlawful conduct the police officer cited Donovan.

[2] Plaintiff also amended her complaint to add Premium Diamond Selection SA as a defendant, but she has since dismissed Premium Diamond Selection SA without prejudice.

## II. Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. Analysis

As mentioned, Plaintiff brought vicarious liability and negligent hiring, training, and retention claims against NanoDiamond. NanoDiamond moved for summary judgment on all claims. NanoDiamond argues that the "Court should grant summary judgment in favor of

3

NanoDiamond on Plaintiff's vicarious liability claim because the undisputed facts show that Donovan was not acting within the scope of her employment when the car accident occurred." (Do. No 51 at 2). Additionally, the Defendants maintain that the Court should grant summary judgment on Plaintiff's negligent hiring, supervision, and retention claim because "there is no evidence that NanoDiamond could have reasonably foreseen that Donovan was an allegedly incompetent driver." (Doc. No. 51 at 2).

Plaintiff responded, contending that the summary judgment is not proper because "Donovan's testimony provides more than a scintilla of evidence creating a genuine issue of material fact that Donovan was acting within the scope of employment at the time of the accident." (Doc. No. 55 at 2). Plaintiff further urges the Court to deny Defendants' motion on the negligent hiring, training, and retention claim since "more than a scintilla of evidence exists creating a genuine issue of material fact that Donovan was an incompetent driver." (Doc. No. 55 at 2).[3] Alternatively, Plaintiff argues the Court should "give the parties more time for discovery before ruling on the motion for summary judgment because Defendant [NanoDiamond] has not produced any documents in response to Plaintiff's Request for Production." (Doc. No. 55 at 15).

The Court will address both the vicarious liability and negligent hiring, remaining, and retention claims, beginning with the vicarious liability claim.

### 1. Vicarious Liability

Defendants argue that Plaintiff was not acting in the course and scope of her employment at the time of the accident "because she was on a purely personal errand to get food and coffee." (Doc. No. 51 at 7). Conversely, Plaintiff maintains that Donovan was in the course and scope of

---

[3] Plaintiff also argues the Court should deny Defendants' Motion because "Defendants did not confer with Plaintiff prior to filing the motion and did not include the required Certificate of Conference." (Doc. No. 55 at 10). The Local Rule Plaintiff refers to does not apply to dispositive motions. *See* LR 7.1.

4

her employment at the time of the collision since "she was acting within her general authority to further the employer's business of opening up a Houston office and setting up a company apartment." (Doc. No. 55 at 11). In other words, since the overall reason she was in Houston was for business, everything she did was in the course and scope of her employment.

"Vicarious liability" or "respondeat superior" is a common law doctrine that imputes one person or company's fault onto another. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130–31 (Tex. 2018). Fault is imputed directly because of the relationship between the two parties. "The doctrine has been explained as 'a deliberate allocation of risk' in line with 'the general common law notion that one who is in a position to exercise some general control over the situation must exercise it or bear the loss.'" *Painter*, 561 S.W.3d at 130–31 (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002). Courts have long recognized the employer-employee relationship as one that implicates the doctrine's risk-shifting policies. *Painter*, 561 S.W.3d at 131. An employer, however, is only responsible for its employee's negligent acts if they are within the course and scope of his or her employment. *Id.* Therefore, in order to prove an employer is vicariously liable for a worker's negligence, the plaintiff must show, at the time of the negligent conduct, "the worker (1) was an employee and (2) was acting in the course and scope of [her] employment." *Id.*

Summary judgment is proper if Defendants can disprove one of the elements as a matter of law. *Arbelaez v. JustBrakes Corp.*, 149 S.W.3d 717 (Tex. App.–Austin 2004, no pet.) ("We can only uphold the district court's summary judgment if [the defendant] disproved as a matter of law at least one of these essential elements."). Neither of the parties contest the first element—that Donovan was an employee. Rather, Defendant's Motion for Summary Judgment focuses on

whether Donovan was in the course and scope of her employment. The Court will also focus its analysis on that element.

Employees are within the scope of their employment when they are acting "(1) within the general authority given by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which employed." *Garcia v. United States*, 88 F.3d 318, 320 (5th Cir. 1996) (discussing Texas law). Generally, an employer is not liable for an employee's acts that occur "while traveling to and from work or otherwise deviating from the employer's objectives." *Williams v. B&B Elec. & Util. Contractors, Inc.*, No. 2:19-CV-00325, 2022 WL 6600973, at *3 (S.D. Tex. Feb. 7, 2022). "[I]f an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002); *e.g., Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (concluding that employer was not vicariously liable when employee drove his employer's truck to nearby convenience store to purchase cigarettes).

Nevertheless, if an employee has undertaken "a special mission at the direction of his employer or is otherwise performing a service in furtherance of [her] employer's business with the express or implied approval of [her] employer" the employer could be held liable. *Painter*, 561 S.W.3d at 136. "If found to be on a special mission, the employee will be considered to be in the course and scope of his employment from the time that the employee commences the special mission until its termination, ***absent any deviation therefrom for personal reasons.***" *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex.App.—El Paso, 1993, no writ) (emphasis added). Thus, the deviation exception even applies to the special mission doctrine and follows the long-standing general rule that "when the servant turns aside, for however short a time, from the

prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone." *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 201, 247 S.W.2d 236, 241 (1952).

The Fifth Circuit considered the special mission exception in *Garcia v. United States*, 88 F.3d 318 (5th Cir. 1996). In that case, the Environmental Protection Agency ("EPA") dispatched one of its agents from its Dallas office to Austin to assist in a criminal investigation. *Id.* at 320. While in Austin, the agent was involved in a car accident with the plaintiff. *Id.* The plaintiff filed a lawsuit against the agent in state court, but pursuant to the Federal Employees Liability Reform and Tort Act, the Attorney General certified that the agent was acting within the scope of his employment, which resulted in the substitution of the United States as defendant and removal to federal court. *Id.* The plaintiff sought remand, asserting that the agent was not acting in the scope of his employment and consequently was not entitled FTCA protection. *Id.* Thus, the question became whether, under Texas law, the agent was acting within the course and scope of his employment. *Id.* The accident occurred at 10:00 p.m. when the agent was driving from dinner to an unknown location. *Id.* The Government argued the agent was in the course and scope since he was on a special mission via his assignment in Austin. *Id.* at 321. Ultimately, the Fifth Circuit rejected the Government's position, reasoning that even "assuming *arguendo* that the agent's entire stay in Austin was a special mission, we conclude that [the special mission] exception would not apply at the time of the accident, because the agent was then engaged in a personal deviation… He apparently had completed work for the day (at the very least, temporarily) and stopped for dinner." *Id.* Therefore, the Fifth Circuit held "the agent was not within the scope of employment at the time of the accident." *Id.*

7

The case at hand is strikingly similar to *Garcia v. United States*. Here, Plaintiff contends Donovan was in the course and scope of her employment since "she was acting within her general authority to further the employer's business of opening up a Houston office and setting up a company apartment." (Doc. No. 55 at 11). As evidence, the Plaintiff points to various statements Donovan made in her deposition. For example, Plaintiff said the "entire day [of the accident] was a working day." (*See* Doc. No. 51-1 at 67:20).[4] Additionally, she explained that "[t]he whole day was work. So that morning, would have checked emails, packed up the car, the – to arrive at the apartment. There was movers coming. There was AT&T service provider coming that day." (Doc. No. 51-1 at 60:12-5). Lastly she added, the

> work task for the day was really to get as much as possible to for – like, you know, to eat. There wasn't even forks and knives in the apartment, so I needed to go out and do any errands that day to kind of have what was essential to get by in the apartment. So that was my work task for that day.

(Doc. No. 51-1 at 60:16-21). Despite Donovan's classification of the day, the Court must look to the facts to determine whether she was in the course and scope of her employment or engaging in a deviation for personal purposes at the time of the accident.

Even if the entire day was a "work day" certain conduct does not qualify as furthering the employer's business. *See, e.g., Atl. Indus., Inc. v. Blair*, 457 S.W.3d 511, 517 (Tex. App.—El Paso 2014) (holding evidence that employee was on call and driving a truck bearing the company logo insufficient to support determination that he was within course and scope of his employment at time of accident), *rev'd on other grounds*, 482 S.W.3d 57 (Tex. 2016); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex. App.—San Antonio 1993, no pet.) (holding fact that employee involved in accident while driving company car and who was required to be on 24-hour call was

---

[4] In her deposition the attorney asked about the day of the accident stating, "So NanoDiamond may have been expecting you to be moving into the apartment but also working." To which Donovan replied, "[m]y entire day was a working day." (Doc. No. 51-1 at 67:16-20).

"not sufficient to raise an issue of course and scope"). NanoDiamond sent Donovan to Texas to "find a physical office, to meet with customers, and then help – be part of the team to establish the ... US office." (Doc. No. 51-1 at 27:9-13). Nevertheless, at the time of the accident, Donovan was headed to Starbucks for breakfast and coffee. Analyzing the factual background in this case, it is clear that acquiring food and coffee for her own consumption was not done "in furtherance of the employer's business," even if the entire day was a "work day." Even assuming *arguendo* that the entire trip to Houston constituted a special mission, at the time of the incident Donovan was deviating from her employment tasks. She was clearly running a personal errand. NanoDiamond did not benefit from, nor did they authorize, Donovan's activity at the time of the accident. Therefore, the Court finds as a matter of law that Donovan was not within the scope of employment at the time of the accident and that summary judgment is proper on Plaintiff's vicarious liability claims against the Defendants.

## 2. Negligent Hiring, Supervision, and Retention

Defendant's Motion next addresses Plaintiff's negligent hiring, supervision, and retention claims.

Negligent hiring, retention, and supervision claims are negligence claims based on an employer's direct negligence rather than on vicarious liability. *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 648 (S.D. Tex. 2016). Like a simple negligence claim, the elements of a negligent hiring, retention, and supervision claim are duty, breach, proximate cause (otherwise known as cause in fact), and damages. *Id.* The policy reasoning behind negligent hiring, retention, and supervision claims is that an "employer owes a duty to its other employees and the general public to ascertain the qualifications and competence of the employees it hires, especially where the occupation at issue could cause hazard to others or requires skilled or experienced persons."

*Id.* For that reason, an employer will be liable for negligent hiring, retention, or supervision if it knows, or reasonably should know, that it hired an incompetent or unfit employee. *Id.* In certain scenarios, employing an unlicensed driver can constitute negligence on behalf of the employer. *See Mejia-Rosa v. John Moore Servs.*, Inc., No. 01-17-00955-CV, 2019 WL 3330972, at *10 (Tex. App. July 25, 2019).

Initially, both parties focus on Donovan's actions in driving as the focus for liability under the hiring, supervision, and retention umbrella. Specifically, Plaintiff contends "Donovan was an incompetent driver because she lacked a valid drivers [sic] license to legally drive in Texas." (Doc. No. 55 at 14). Defendants contest that assertion, claiming that the license is valid pursuant to the United Nations Conference on Road and Motor Transport Treaty. The parties spend most of their motions discussing whether or not Donovan's Irish license was eligible for reciprocity in Texas, but the Court finds that this fact is not outcome-determinative. As mentioned, the law requires that for an employer to be liable for negligent hiring, retention, or supervision it must have known, or reasonably should have known, that it hired an incompetent or unfit employee. *Phillips*, 189 F. Supp. 3d at 648. Thus, even if Donovan's license was invalid under Texas law, Plaintiff has presented no evidence that Defendants knew or reasonably should have known that fact.

Instead, the evidence presented to the Court shows that Donovan had never been in a previous accident (Doc. No. 51-1 at 79:9-10) and that she was originally hired in Ireland in 2013, where her license was and is indisputably valid. (Doc. No. 51-1 at 18:20-23). Therefore, the Court concludes that there is no competent summary judgment evidence to raise a genuine issue of material fact that Defendants were negligent. Summary judgment is, therefore, proper.

## IV. Conclusion

For the aforementioned reasons, the Court **GRANTS** Defendants NDPDC Corporation and NanoDiamond Products Designated Activity Company's Motion for Summary Judgment. (Doc. No. 51).

Signed at Houston, Texas, this ___27th___ day of March, 2023.

Andrew S. Hanen
United States District Judge

11